# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**BETTY WHITLOCK**                                                                                  **PLAINTIFF**

**VS.**                                              **CASE NO. 3:19CV00064 PSH**

**ANDREW SAUL,[1] Commissioner,**
   **Social Security Administration**                                              **DEFENDANT**

## ORDER

    Plaintiff Betty Whitlock ("Whitlock"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Saul") to deny her claim for Disability Insurance benefits (DIB), contends the Administrative Law Judge ("ALJ") erred: (1) by missing or ignoring objective medical evidence proving severe scoliosis of her thoracic spine and failing to find it was a severe impairment; (2) by failing to develop the record regarding hearing loss and mental impairments; (3) by disregarding the opinions of Whitlock's treating physician, an examining consultative physician, and a nonexamining disability screener, instead relying on a nonexamining reconsideration screener and his own medical opinions; (4) in the residual functional capacity ("RFC") assessment; and (5) by finding Whitlock could perform her past relevant work. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on April 25, 2018. (Tr. 31-65). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Saul's decision. 42

---

[1] Andrew Saul is now the Commissioner of Social Security and is substituted as the appropriate defendant pursuant to Federal Rule of Civil Procedure 25(d).

1

U.S.C. § 405(g). The relevant period under consideration is from December 23, 2014, the alleged onset date, through March 31, 2018, Whitlock's date last insured.

*The Administrative Hearing:*

At the outset of the hearing, Whitlock indicated she had been having hearing problems. Upon subsequent questioning from the ALJ, she indicated her left ear was the issue, and that she had not seen a doctor for the problem. She was 50 years old, was 5'2" tall and weighed 112 pounds, and had an eleventh grade education. Whitlock lived with her husband and fifteen year old daughter. She stated she could read and write, add and subtract, and had past relevant work for about 2 ½ years as an office worker at Pathfinders. She had conflicts with her supervisor at this job, and was fired. Whitlock testified she could not perform this previous job at the time of the hearing because her pain has "gotten a lot worse." (Tr. 40). Whitlock also had past relevant work, for fourteen years, as a tobacco store manager. This job entailed hiring, supervising, and scheduling six workers. Whitlock stated she left that job, which required lifting up to thirty pounds, due to leg and back problems. William David Elmore ("Elmore"), a vocational expert, rated Whitlock's past work as light semi-skilled and light skilled.

Whitlock explained she could not perform her past jobs due to pain in her back, hips, and shoulder, numbness in her right leg, inability to lift a gallon of milk, and inability to stand or sit for long periods. According to Whitlock, her impairments prevent her from shampooing carpets, grocery shopping, and sometimes prevent her from cooking. Whitlock stated she took Meloxicam for leg pain, and no other medication. Whitlock conceded that she smoked one half a pack of cigarettes daily and was unaware smoking was bad for her osteoporosis. Whitlock identified a Dr. Wallace as having diagnosed her with osteoporosis, stage two. (Tr. 34-59).

Elmore was asked to consider a hypothetical worker of Whitlock's age, education, and experience, who could perform light work. The ALJ asked Elmore to assume this worker has scoliosis, low back pain related to scoliosis, some leg and ankle pain, a negative RA factor and SED rate of 6 when 0 to 20 is defined as normal, and the worker has mild to moderate pain, and could occasionally climb, stoop, crouch, kneel, and crawl. Although the ALJ found the worker to have a mood disorder, he also found there were no mental job restrictions. Elmore responded that such a worker could perform Whitlock's past relevant jobs as a retail sales clerk, retail manager, and case aide. The ALJ noted that if Whitlock was limited to sedentary jobs she would be deemed "disabled based on the grids." (Tr. 62). (Tr. 59-62).

*ALJ's Decision:*

In his August 24, 2018, decision, the ALJ determined Whitlock had the following severe impairments: scoliosis and degenerative disc disease of the lumbar spine, with osteopenia/osteoporosis. The ALJ addressed Whitlock's allegations of mental impairments, finding them non-severe. Specifically, the ALJ analyzed the "paragraph B" criteria and determined Whitlock had mild limitations in these three areas: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace. The ALJ found no limitation in Whitlock's ability to adapt or manage herself. The ALJ found Whitlock did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ expressly considered if Whitlock met Listing 1.02 (major dysfunction of a joint) or Listing 1.04 (disorders of the spine). The ALJ further determined Whitlock had the RFC to perform the full range of light work. The ALJ, citing the appropriate factors, assessed Whitlock's subjective allegations, finding her statements "not entirely consistent

3

with the medical evidence and other evidence in the record." (Tr. 21). The ALJ thoroughly discussed the medical evidence, as well as the hearing testimony and the responses submitted by Whitlock in a Function Report and a Pain Questionnaire. With regard to the medical evidence, the ALJ emphasized the findings of Dr. Michael Eric Tedder ("Tedder"), Whitlock's primary treating physician. He also addressed the 2017 consultative physical evaluation of Dr. Maharshi Patel ("Patel"), who opined, among other things, that Whitlock was capable of sitting for a full workday with mild to moderate amounts of walking and/or standing as needed. The ALJ also noted the non-examining state agency medical consultant's opinion that Whitlock could perform less than the full range of sedentary work, finding the opinion "limited in persuasiveness." (Tr. 25). Relying upon Elmore's testimony that Whitlock could perform her past relevant work, the ALJ concluded she was not disabled. (Tr. 10-26).

*Medical Evidence During the Relevant Period:*

Whitlock saw Tedder in January 2015 and was diagnosed with osteoporosis–primary, mood disorder, scoliosis, and grief. She was taking Alprazolam, Mylanta, Vitamin D tablets, Prilosec, Ultram, Meloxicam, and Zoloft. (Tr. 283-290). She returned for medication refills in March, and was diagnosed with mood disorder–primary, nocturnal leg cramps, and musculoskeletal pain. Whitlock reported bilateral leg pain. Tedder's physical exam noted that Whitlock appeared well-developed, with normal range of motion in her neck and normal musculoskeletal range of motion. Tedder directed her to return in six months. (Tr. 290-297). When Whitlock returned to Tedder in September 2015, she was diagnosed with mood disorder–primary and insomnia, unspecified. Tedder's plan was to continue the same medications, with Whitlock to return in two months. (Tr. 298-304). At her November 2015 visit with Tedder, Whitlock was diagnosed with nocturnal leg

4

cramps–primary, mood disorder, osteoarthritis of ankle, unspecified laterality, unspecified osteoarthritis type. In the "subjective" portion of the treatment notes, no complaints about any bodily systems were recorded. Tedder's examination showed Whitlock ro be well-developed and well-nourished, with a normal range of musculoskeletal and neck motion. Tedder also found her to have a normal mood and affect. Whitlock was directed to return if symptoms worsened or failed to improve. (Tr. 305-313).

Whitlock next saw Tedder in April 2016, when she complained of hip pain and he diagnosed mood disorder – primary. Whitlock reported to Tedder that the left hip pain stemmed from an incident more than one week prior to the appointment; that the pain was aching, moderate, and aggravated by weight bearing; and that mild relief was obtained via nonsteroidal anti-inflammatory drugs. Tedder's objective examination was normal in all areas with the exception of musculoskeletal tenderness. Whitlock was to return if symptoms worsened or failed to improve. (Tr. 314-322).

Whitlock visited Tedder in December 2016 for medication refills, and was diagnosed with arthritis of both knees – primary, mood disorder, and nausea. Tedder listed Whitlock's problems as osteoporosis, mood disorder, scoliosis, grief, nocturnal leg cramps, musculoskeletal pain, and arthritis. No complaints were recorded in the "subjective" portion of the treatment notes. Tedder's objective findings included a normal range of neck and musculoskeletal range of motion. Tedder administered a decamix injection and a vitamin B-12 injection. Whitlock was to return if symptoms worsened or failed to improve. (Tr. 337-343).

In February 2017, Patel performed a physical consultative examination. Whitlock reported a history of back pain for thirty-five years. According to Whitlock, this pain interfered with day to

day activities, medication provided some relief during the pain episodes, and her legs sometimes got numb, leading to falls. Whitlock denied shoulder or neck pain in a review of her systems, and admitted to anxiety, depression, and sleeping difficulties. She also denied any difficulty in concentrating. Patel's physical examination included the following findings:

> **MUSCULOSKELETAL:** No muscle asymmetry, atrophy, or involuntary movements. No structural deformity, effusion, periarticular swelling, erythema, heat, or tenderness of any joint except deformity of lumbar spine with limited range of motion.
> **Gait/Station:** Abnormal gait and ambulates without assistive device. Able to rise from a sitting position without assistance, stand on tiptoes and heels, and tandem walk without problems. Claimant was able to bend and squat with moderate difficulty.
> **Grip:** 5/5 grip strength with adequate fine motor movements, dexterity and ability to grasp objects bilaterally.
> **EXTREMITIES:** No edema, cyanosis, or erythema. . .
> **MENTAL STATUS:** Alert and oriented to time, place, and situation. Cooperative with exam. Does not appear depressed or anxious. Able to communicate with no deficits. Recent and remote memory intact. Good insight and cognitive function. . .
> **RADIOLOGY:**
>   Lumbosacral images (AC and lateral) show severe scoliosis of the lumbar spine. . .
>       Impression: Severe lumbar scoliosis with mild degenerative changes of the lumbar spine. . .
> **DIAGNOSIS**
>       1. Severe lumbar scoliosis with mild degenerative changes of the lumbar spine.
> **CONCLUSION**
>        Based on today's examination and the objective evidence, I believe the claimant should be able to sit for a full workday with mild to moderate amounts of walking and/or standing as needed. Claimant should avoid duties which require a lot of squatting. Claimant needs to limit lifting over 20 lbs. due to decreased range of motion of lumbar spine.

(Tr. 349-351).

Whitlock saw Tedder in May 2017, and the treatment note reflects she was experiencing no problems at that time. (Tr. 356). In August 2017, Whitlock returned for medication refills. All of

her systems were negative, and the physical examination reflected normal findings. Tedder provided a sample of Duavee and decreased the Tramadol dosage due to decreased hearing. (Tr. 356). In January 2018, Whitlock returned to Tedder for a wellness examination. Subjectively, Whitlock reported aching pain in her right hip, thigh, and ankle stemming from an incident more than one week earlier. Tedder's objective physical exam found normal range of motion in her neck, and normal musculoskeletal range of motion. Tedder again administered a vitamin B-12 shot, and no diagnosis was made. (Tr. 401-402). A few days later Whitlock made a follow-up visit, with normal findings, and with no compliance problems noted with her medications. (Tr. 402).

In March 2018, Whitlock presented with lower extremity injury/pain which was described as aching, severe, constant since onset, aggravated by movement and weight bearing, unresponsive to acetaminophen, and 7 on a scale of 1-10. Tedder noted "severe 90 degree thoracic lumbar scoliosis" with severe degenerative joint disease of the lumbar spine. (Tr. 405). Tedder's diagnosis was scoliosis of thoracic spine – severe, leg pain, scoliosis concern, anemia, iron deficiency, mood disorder, and scoliosis of the lumbar spine. The severe thoracic lumbar scoliosis with severe degenerative joint disease of the lumbar spine were observed on an x-ray. (Tr. 408).

On the same day of Whitlock's March 2018 visit, Tedder executed a form Medical Source Statement – Physical indicating the following abilities during a workday: lift and carry less than ten pounds occasionally or frequently; stand and walk less than two hours; sit less than two hours, and sit for thirty minutes without a break; unable to reach, finger, and handle; never climb, balance, stoop, kneel, crouch, or bend; need for frequent, longer than normal breaks, and the opportunity to shift at will from sitting or standing/walking. While Tedder indicated Whitlock's impairment or her medications could cause a decreased ability to concentrate or persist, he also indicated she would

7

never need to be redirected in order to remain on task. The checklist provided an area for Tedder to list objective medical findings which supported the limitations he found. In this area, Tedder wrote: "Has to sit to cook/ cannot lift a gallon milk without using both hands/ this lady is permanently & totally <u>disabled</u>!" (Emphasis in original) (Tr. 411-412). The time period covered by Tedder's opinion was "life." (Tr. 412).

The Court now turns to the arguments advanced by Whitlock.

**Error by missing or ignoring objective medical evidence proving severe scoliosis of her thoracic spine and failing to find it was a severe impairment:**

The ALJ acknowledged that Tedder diagnosed Whitlock with severe 90 degree thoracic lumbar scoliosis on May 27, 2018, four days prior to the close of the relevant period under consideration. The ALJ wrote the "record does not include any actual objective radiographic or other scanning diagnostic reports" to support Tedder's diagnosis. (Tr. 21). The ALJ was incorrect, as the x-ray results document severe 90 degree thoracic lumbar scoliosis. (Tr. 408). He identified scoliosis and degenerative joint disease of the lumbar spine, but not the thoracic spine, as a severe impairment in his opinion. (Tr. 12).

Any error in failing to designate severe scoliosis of the thoracic spine as a severe impairment is harmless. The ALJ did not conclude his analysis at Step 2 in this instance. Instead, he found other severe impairments and proceeded with the sequential evaluation. Once an ALJ finds that a claimant has a "severe" impairment at Step 2, the ALJ must then consider all impairments, including those that are not severe, in determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(e); 416.945(e); Social Security Ruling 96–8p, at 5; *see also Maziarz v. Secretary of Health and Human Serv.,* 837 F.2d 240, 244 (6th Cir.1987) (failure of ALJ to find claimant's cervical condition was

8

severe at Step 2 was not reversible error where ALJ found the claimant had severe heart disease and proceeded with the sequential evaluation). Here, the ALJ noted his duty to consider "all of the claimant's impairments, including impairments that are not severe" at Step 4. (Tr. 11). In addition, the ALJ correctly noted he was not required to methodically discuss "every factor." (Tr. 15). The "failure to cite specific evidence does not indicate that such evidence was not considered." *See Wildman v. Astrue,* 596 F.3d 959, 966 (8th Cir.2010) and *Holderer v. Astrue*, No. 4:11CV00227 JTR, 2012 WL 1439165, at *3 (E.D. Ark. Apr. 26, 2012). There is no merit to this argument, and the proper assessment of the entirety of the medical evidence will be addressed elsewhere in this Order.

**Error by failing to develop the record regarding hearing loss and mental impairments:**

Whitlock contends the ALJ neglected to develop the record when he did not seek additional evidence, including consultative examinations, regarding her hearing loss and mental impairments. The Court disagrees. Even though Whitlock is correct that the ALJ has a duty to fully and fairly develop the record, she fails to demonstrate how the record, which appears to contain all treatment records during the relevant period, was inadequate and how additional reports would cure the inadequacy. The objective medical evidence in this case was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient). Ane while the ALJ has an obligation to fully develop the record, there is no bright line test for determining whether he has done so; the determination is made on a case by case basis. *See Battles v. Shalala*, 36 F.3d 43 (8th Cir. 1994). The key is whether the record provides the ALJ with ample information to allow an informed decision to be made. Whitlock, who bears the burden of demonstrating her disability,

9

points to her statements at the administrative hearing of hearing problems as a reason for further development on the hearing issues. Whitlock did not allege disability due to hearing loss, and the two brief treatment notes referencing hearing issues do not suggest further exploration was necessary. In February 2017, Patel recorded that Whitlock's hearing was intact bilaterally to a whisper. (Tr. 350). In August 2017, Tedder decreased the dosage of Tramadol due to decreased hearing.[2] (Tr. 356). The ALJ was tasked with digesting a multitude of medical evidence, and almost all of this evidence dealt with issues other than Whitlock's hearing. The ALJ properly relied upon the record before him with regard to Whitlock's hearing.

Whitlock similarly argues the ALJ should have further developed the record regarding her mental impairments. She alleged anxiety as one of her disabling impairments, and the ALJ addressed in detail her assertion of mental impairments, finding them to be non-severe. While Whitlock is correct that she took Xanax and Zoloft for years (as far back as 2005), treating physician Tedder consistently found her to have normal mood, affect, and behavior. These findings span a period from April 2016 to January 2018. (Tr. 318, 356, 401). Further, consultative examiner Patel found Whitlock "alert and oriented to time, place and situation. Cooperative with exam. Does not appear depressed or anxious. Able to communicate with no deficits. Recent and remote memory intact. Good insight and cognitive function." (Tr. 350). There was no error in the ALJ's reliance upon the record before him.

**Error by disregarding the opinions of Tedder, Patel, and a nonexamining disability screener and instead relying on a nonexamining reconsideration screener and his own medical**

---

[2] Whitlock argues that Tedder also gave her samples of Duavee to address hearing issues. Docket entry no. 16. However, Duavee is prescribed to address symptoms of menopause. *See* www.webmd.com/drugs/2/drug-165639/duavee-oral/details.

10

**opinions:**

Whitlock essentially portrays the ALJ as being faced with a multiple choice question where he was required to choose: (A) Tedder's opinion; (B) Patel's opinion; (C) non-examining state agency consultant Kay Cogbill's ("Cogbill") opinion;[3] (D) non-examining state agency consultant William Harrison's ("Harrison") opinion;[4] or (E) his own medical opinion. Whitlock contends the ALJ chose D and E, rejecting A, B, and C. This portrayal does not capture the process or the result reached by the ALJ. The ALJ was not obligated to choose one or more opinions to the exclusion of other opinions and other medical evidence. More discussion of the ALJ's duty will follow in the analysis of Whitlock's fourth claim, error in the RFC determination.

Since Tedder was a treating physician, his opinion merits deference and "is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). The ALJ thoroughly addressed Tedder's opinion, finding it "inexplicably inconsistent with his own prior medical findings and reports. . ." (Tr. 24). The ALJ's reasons for discounting Tedder's opinion included: the absence of mentions of chronic pain, numbness, and limiting symptoms in treatment notes; negative and normal findings of subjective complaints; no notations of debilitating effects of scoliosis prior to the March 27, 2018 opinion; no advice from Tedder for Whitlock to restrict her physical activities; no notation of an inability to perform gainful activity prior to March 27, 2018; no referral to an orthopaedic or pain specialist; no

---

[3] In February 2017, Cogbill opined that Whitlock was capable of performing less than sedentary, less than unskilled work. (Tr. 69)

[4] In June 2017, Harrison opined that Whitlock could perform light work with limits. (Tr. 89).

evidence Whitlock was regularly prescribed strong, narcotic medications from Tedder; and no complaints of adverse side effects from the medications taken by Whitlock. (Tr. 23). These factors provide an ample basis for discounting Tedder's opinion. The normal objective findings in Tedder's treatment notes prior to March 27, 2018 are particularly persuasive, and substantial evidence supports the weight the ALJ assigned to Tedder's opinion.

In summary, there was no error in the alleged failure to the ALJ to wholly embrace Tedder, or any other physician. The ALJ did not simply opt for one physician's opinion to the exclusion of all others. *See Hensley v. Colvin*, 829 F.3d 926 (8th Cir. 2016) (no requirement that an RFC finding be supported by a specific medical opinion). There is no merit to Whitlock's third claim.

**Error in the RFC assessment:**

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Medical records from treating physicians can provide affirmative medical evidence supporting an RFC determination. *Johnson v. Astrue*, 628 F.3d 991 (8th Cir. 2011). It is ironic that the treatment notes of Tedder, who opined Whitlock to be permanently and totally disabled, provide evidence supporting the ALJ's RFC determination. The Court has previously cited the normal findings, and absence of referrals, of limitations, and of strong prescription medication as persuasive items gleaned from Tedder's notes. In addition, Whitlock saw Tedder on an infrequent basis, occasionally with a six month gap between visits.

Patel's findings also lend some support the ALJ's RFC holding. While Patel did not explicitly endorse Whitlock's ability to perform light work, he opined she could perform work with

mild to moderate amounts of walking and /or standing, avoiding duties requiring a lot squatting and lifting over twenty pounds. (Tr. 351). The ALJ assigned "some evidentiary weight" to Patel's findings. (Tr. 25). Citing the other evidence in the record and the hearing testimony, the ALJ determined Whitlock capable of a greater degree of physical residual functioning than found by Patel. The ALJ could and did rely, in large part, upon the records of Tedder and Patel. The ALJ did not rely upon the opinion offered by a state agency medical professional, who opined Whitlock could perform less than sedentary work. The ALJ did view as very persuasive the non-examining state psychological consultant who found Whitlock's mental impairments were non-severe.

The ALJ also considered Whitlock's testimony and other factors in arriving at his RFC. He thoroughly examined Whitlock's Function Report and her Pain Questionnaire, noting she reported in October 2016 taking no medications for her alleged disabling conditions. Also, the ALJ observed that Whitlock left her most recent job for reasons other than disability. Ceasing work for reasons other than alleged disability undermines a claimant's claim that her impairments are disabling. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

Based upon the record before him, the ALJ could make the RFC assessment that he did, and substantial evidence supports his findings. Reversal of the ALJ is not appropriate

> "so long as the ALJ's decision falls within the 'available zone of choice.' " *Bradley v. Astrue,* 528 F.3d 1113, 1115 (8th Cir.2008) (quoting *Nicola v. Astrue,* 480 F.3d 885, 886 (8th Cir.2007)). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola,* 480 F.3d at 886). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart,* 421 F.3d 785, 789 (8th Cir.2005).

*Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008).

**Error in finding Whitlock could perform her past relevant work:**

Elmore opined that Whitlock's past work, such as her prior job as a case aide, was performed at the light exertional level. For her final argument, Whitlock maintains "the record does not support an RFC for light work. Accordingly, the record does not support a finding Ms. Whitlock could perform her past relevant light exertional work." Docket entry no. 11, page 24. The essence of this argument is error in determining her RFC. This argument has been fully addressed in our discussion of Whitlock's third and fourth claims. Since there was no error in the RFC determination, it follows that there is no error in the ALJ's finding that Whitlock could perform her past light work.

Saul's ultimate decision was supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that Saul's final decision is affirmed and Whitlock's complaint is dismissed with prejudice.

IT IS SO ORDERED this 4th day of October, 2019.

_____
UNITED STATES MAGISTRATE JUDGE